THE NORTH CHICAGO STREET RAILROAD COMPANY

*v.*

JOHN F. WILLIAMS.

*Filed at Ottawa January 18, 1892.*

1. NEGLIGENCE—*contributory—getting on horse cars while in motion.* Whether a person in getting upon a horse car while it is in motion is chargeable with a want of ordinary care, is a question of fact for the determination of the jury under all the circumstances of the case. It is not negligence *per se* for a person to get on or off a street car drawn by horses while in motion, and it is not error to refuse an instruction that such act is such conclusive evidence of contributory negligence as to bar a recovery by him.

2. A stricter rule than that applicable to horse cars must be held to apply to steam cars. So an act in getting upon a train drawn by steam, which would amount to gross negligence, might be prudent if done on a horse car when the latter was not in rapid motion.

3. SAME—*rule forbidding persons getting on cars while in motion— waiver of rule.* Although a person may get upon a horse car while in motion, in violation of a rule of the company, yet if it is made to appear from the evidence that such rule has been waived or revoked in his favor, he will nevertheless be entitled to his action for his injuries suffered from any want of care on the part of the company. If the conductor sees that the passenger gets aboard while the car is in motion, and makes no objection or warning, a fair question is presented for the jury to find, from all the circumstances, whether the rule has not been waived.

4. SAME—*whether trespasser.* This court is not prepared to hold that a party is a trespasser after he gets upon a horse car, even though no fare has been collected of him before he meets with an injury, simply because he has violated a rule of the company as to the mode of his getting on. The case of *Chicago, Burlington and Quincy Railroad Co.* v. *Mehlsack*, 131 Ill. 61, has no application here, because in that case the person injured was trying to "steal" a ride upon a train of steam cars.

5. SAME—*railroad track too near telegraph pole or other obstruction.* Where a railroad company places its track so near a telegraph pole or other obstruction which it is necessary for its cars to pass, that its passengers, in getting on and off the cars, and while upon them, are in danger of being injured by contact with such obstruction, it is a fair question for the jury whether the company is or is not guilty of negligence.

| | |
|---|---|
| 140 | 275 |
| 160 | 326 |
| 51a | 312 |
| 140 | 275 |
| 63a | 106 |
| 63a | 186 |
| 64a | 166 |
| 140 | 275 |
| 168 | 126 |
| 140 | 275 |
| 170 | 421 |
| 140 | 275 |
| 76a | 614 |
| 140 | 275 |
| 175 | 639 |
| 140 | 275 |
| 179 | 128 |
| 82a | 188 |
| 140 | 275 |
| 180 | 532 |
| 180 | 533 |
| 140 | 275 |
| 187 | ¹615 |
| 140 | 275 |
| 190 | ¹²484 |
| 140 | 275 |
| 100a | ¹²186 |
| 101a | ¹186 |
| 140 | 275 |
| 199 | 522 |
| 102a | ¹325 |
| 140 | 275 |
| 203 | ¹⁰232 |
| p106a⁵101 | |
| e106a⁵102 | |
| 140 | 275 |
| 209 | ¹¹ 87 |
| 210 | ⁶231 |
| 211 | ¹370 |
| 140 | 275 |
| 215 | ¹293 |

· 6. It has been held that it is inexcusable in a street railroad company to permit an obstruction to stand so near its track as to render the use of the step or running board dangerous to life or limb, inasmuch as exceptional cases may arise where it is lawful and proper for even a passenger to use such stepping board.

7. INSTRUCTION—*personal injury—ordinances of municipal corporation stopping street car at street crossings.* In an action by a passenger on a horse car against the company, to recover for a personal injury received by being propelled against a telegraph pole near the track while getting on the car in motion, the defendant asked the court to instruct the jury, that under the ordinance of the city the company had no right to stop its cars except on the further crossing of street intersections, which was refused : *Held,* no error in the refusal, it being immaterial whether the defendant had the right to stop its cars at the further crossing or not, and there being no claim that the driver refused to stop the car at the place where the plaintiff got on the car.

8. SAME—*refusing obscure and confusing.* In an action against a street railway company by one injured while getting upon a horse car or standing on the running board or platform seeking a seat, the defendant asked the court to instruct the jury, as a matter of law, that if they believed, from the evidence, the plaintiff had no right to be where he was at the time of the accident, then the defendant was not liable for the injury unless it was done willfully, which was refused : *Held,* no error to refuse the same, as it was obscure and calculated to confuse the jury, and failed to state any facts upon which he had no right to be where he was at the time of the accident.

9. SAME—*passenger's right to be on the car—and on the steps of the car.* If the instruction is to be construed as referring to the plaintiff's right to be on the car at all, it should not have been left to the jury to determine what a man's right is in a given case, without stating to them that such right would arise out of or be based upon certain facts which they might find from the evidence to exist. A right is, of itself, a mere abstract thing.

10. If the plaintiff was merely using the step for the purpose of ascending into the car, he was where he had the right to be ; and if he stood upon the step too long, it could not be said that he was thereby such a trespasser as to relieve the company from any liability other than that for a willful injury. The mere fact of riding on a platform of a street car is not conclusive proof of negligence.

11. SAME—*need not be repeated.* In an action seeking a recovery for a personal injury, the defendant will not be injured by the refusal of an instruction telling the jury that the negligence of the defendant was not of itself sufficient to justify a recovery, when other instructions given required the jury to find not only such negligence of the defend-

ant, but also the exercise of ordinary care by the plaintiff. When all that is material in refused instructions is embraced in others which are given, there will be no error in refusing to give them.

12. CARRIER AND PASSENGER—*relation, how created.* It is not necessary that there be an express contract in order to constitute the relation of carrier and passenger, nor that there should be a consummated contract. The contract may be implied from slight circumstances, and it need not be actually consummated by the payment of fare or entry into the car or boat of the carrier, but the matter depends largely upon the intention of the person at the time he enters the car or boat.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. EGBERT JAMIESON, Judge, presiding.

Mr. WILLIAM B. KEEP, and Mr. EDMUND FURTHMANN, for the appellant:

The court erred in submitting the case to the jury, the plaintiff being guilty of contributory negligence.

A passenger in attempting to get on or off a moving railroad train is guilty of such negligence as to preclude a recovery. *Railroad Co.* v. *Randolph,* 53 Ill. 510; *Railroad Co.* v. *Mock,* 88 id. 87; *Railroad Co.* v. *Scates,* 90 id. 586; *Railroad Co.* v. *Chambers,* 71 id. 519; *Hagan* v. *Railroad Co.* 15 Phil. 278; *Railroad Co.* v. *Dingman,* 1 Bradw. 162; *Turnpike Road* v. *Carson,* 72 Md. 377; *Dietrick* v. *Railroad Co.* 58 id. 347; *Dietrick* v. *Railroad Co.* 56 id. 559; *Sweeney* v. *Railroad Co.* 10 Allen, 368.

Knowing the location of the tracks, etc., plaintiff assumed the risk, and can not recover. Beach on Contributory Neg. sec. 12; *Railroad Co.* v. *Whiteacre,* 35 Ohio St. 627; *Weed* v. *Balston Spa,* 76 N. Y. 329; *Bruker* v. *Covington,* 69 Ind. 33.

The defendant was not guilty of negligence. It was necessary to lay a temporary track, which was placed as far away from the telegraph pole as possible. Under the ordinance the company could only stop its cars to receive passengers after the point of danger had been passed.

The plaintiff was never a passenger of the defendant, as he got upon the car in violation of the rules of defendant. 2 Rorer on Railroads, 979; Hutchinson on Carriers, secs. 587, 588; 2 Wood on Railways, 1035; *Turnpike Road* v. *Carson,* 72 Md. 377.

The relation of carrier to passenger exists by reason of a contract, expressed or implied. Hutchinson on Carriers, secs. 562, 112; *Merrill* v. *Railroad Co.* 139 Mass. 238; *Gardner* v. *Northampton Co.* 51 Conn. 143.

A person who intrudes himself on a train can not recover for an injury unless willfully inflicted. *Moss* v. *Johnson,* 22 Ill. 633; *Railroad Co.* v. *Mehlsack,* 131 id. 61; *Railway Co.* v. *Beggs,* 85 id. 80.

The trial court erred in its rulings in respect to instructions.

Messrs. Stiles & Lewis, for the appellee:

It was gross negligence to place the temporary track in such close proximity to the telegraph pole. *Railroad Co.* v. *Russell,* 91 Ill. 298; *Railroad Co.* v. *Gregory,* 58 id. 272; *Whalen* v. *Railroad Co.* 16 Ill. App. 320; *Dickinson* v. *Railroad Co.* 53 Mich. 43.

It is not negligence *per se* for a person to get on or off a street car drawn by horses, while in motion. It depends upon the circumstances of each case, and is a question for the jury. *Schackert* v. *Railway Co.* 42 Minn. 42; *Briggs* v. *Railway Co.* 148 Mass. 72; *McDonough* v. *Railroad Co.* 137 id. 210; *Butler* v. *Railroad Co.* 49 Hun, 610; 121 N. Y. 112; *Eppindorf* v. *Railroad Co.* 69 id. 195; *Ganiard* v. *Railroad Co.* 2 id. 470; *Rathborne* v. *Railroad Co.* 13 R. I. 709; *Railway Co.* v. *Green,* 56 Md. 84; *Railway Co.* v. *Mumford,* 97 Ill. 560; 2 Thompson on Negligence, p. 1151; Wharton on Negligence, secs. 302, 303, 323, 324; *Railway Co.* v. *Bondron,* 92 Pa. St. 475; *Railway Co.* v. *Walling,* 97 id. 55.

It has been repeatedly adjudicated that it is not negligence, as a matter of law, for persons to ride upon the platforms of

street cars. *Messell* v. *Railroad Co.* 8 Allen, 234; *Maguire* v. *Railroad Co.* 115 Mass. 239; *Clark* v. *Railroad Co.* 36 N. Y. 135; *Ginna* v. *Railroad Co.* 67 id. 596; *Nolan* v. *Railroad Co.* 87 id. 63; *Hayes* v. *Railroad Co.* 97 id. 259; *Hadenkamp* v. *Railroad Co.* 1 Sweeney, 400; *Hourney* v. *Railroad Co.* 7 N. Y. 603; *Huelsenkamp* v. *Railway Co.* 37 Mo. 537; *Burns* v. *Railway Co.* 50 id. 139; *Hunt* v. *Railroad Co.* 14 Mo. App. 160; *Railway Co.* v. *Lee*, 50 N. J. L. 435; *Railway Co.* v. *Higgs*, 38 Kan. 375; *Railway Co.* v. *Boudron*, 92 Pa. St. 475; *Railway Co.* v. *Walling*, 97 id. 55; *Railroad Co.* v. *Renz*, 55 Ga. 126.

The contrary is true of steam cars. *Quinn* v. *Railroad Co.* 51 Ill. 495; *Railroad Co.* v. *Hoosey*, 99 Pa. St. 492; *Dewin* v. *Railroad Co.* 148 Mass. 343.

It has been held in a number of cases that riding on the steps of a horse car or side step of an open car would not preclude a recovery for injuries caused by collision with another car or other obstacle. *Clark* v. *Railroad Co.* 36 N. Y. 135; *Hadenkamp* v. *Railroad Co.* 1 Sweeney, 490; *Railway Co.* v. *Walling*, 97 Pa. St. 55; *Railway Co.* v. *Higgs*, 38 Kan. 375; *Huelsenkamp* v. *Railway Co.* 37 Mo. 537; *Railway Co.* v. *Lee*, 50 N. J. L. 435; *Spooner* v. *Railroad Co.* 54 N. Y. 230.

Mr. Chief Justice Magruder delivered the opinion of the Court:

This is an action for damages for a personal injury begun on November 23, 1888, in the Superior Court of Cook County by the appellee, Williams, against the appellant company. Plaintiff below recovered a judgment, which has been affirmed by the Appellate Court.

Appellant was operating a line of street railway cars, drawn by horses, in the city of Chicago. In May, 1888, it was reconstructing its tracks, so as to substitute the cable system for horse power. As it was necessary to tear up the street in order to insert the cable machinery, it removed the track in

Lincoln Avenue, north of its intersection with Garfield and Cleveland Avenues, to the east side of the street, and near the curb of the east sidewalk.    Upon the track thus laid for temporary use it was propelling its cars by horse power, when the accident occurred by which the plaintiff was injured.    On the east side of Lincoln Avenue, which runs northwest and southeast, just northwest of the corner, where it intersects Cleveland Avenue running directly north and south, stood a telegraph or telephone pole outside of the curb line of the street, and leaning somewhat to the west.    The east rail of the track was a little lower than the west one, and was just two feet from the bottom of the telegraph pole.    When an open car was passing, there were from nine to twelve inches between the telegraph pole and the east ends of the seats; and if a man stood on the rail or platform running along the east side of an open car passing that point, the distance between his shoulders and the pole would vary from two to five inches in different cars.

On the evening of May 23, 1888, between 7 and 8 o'clock, and while it was yet light enough to see clearly, the plaintiff, who was a physician and on his way to see a patient, boarded one of appellant's open cars going northwest upon Lincoln Avenue on said temporary track.    Plaintiff, and a policeman who was with him, were standing a short distance south or south east of the corner where the pole stood, and east of the east track.    When the car came along, and while it was in motion, they stepped up upon the rail or platform on the east side of the car.    The policeman, who was in the rear of the plaintiff, succeeded in getting up upon the rear platform, but, before the plaintiff stepped from the platform into a seat, he was brought in contact with the telegraph pole and knocked off the car, and, falling upon the ground, was injured.    The negligence charged against the company is, that it placed the temporary track too near the curb line of the street and the telegraph poles upon the east side thereof.

The appellant assigns as error, that the court refused to give the ninth and tenth instructions asked by it.   These instructions announce the proposition, that, where a man gets upon a street car drawn by horses while it is in motion, and receives an injury in so doing, his act is such conclusive proof of contributory negligence that he cannot recover.   The refusal of the instructions was not error.   The jury were fully instructed, that the plaintiff could not recover, unless he showed that he was in the exercise of ordinary care for his own safety when the injury occurred.   Whether the plaintiff, in getting upon the horse car while it was in motion, was or was not in the exercise of due care, was a matter for the determination of the jury under all the circumstances of the case.   (*City of Chicago* v. *McLean*, 133 Ill. 148; *Pennsylvania Co.* v. *Frana*, 112 id. 398; *Myers* v. *I. & St. L. Ry. Co.* 113 id. 386; *C., St. L. & P. R. R. Co.* v. *Hutchinson*, 120 id. 587.)

In *Schacherl* v. *St. Paul City Railway Co.* 42 Minn. 42, it is said: "It is well settled, that it is not negligence *per se* for a person to get on or off a street car drawn by horses while it is in motion.   It depends upon the circumstances surrounding each case, and the question is ordinarily one of fact to be submitted to a jury."   In *McDonough* v. *Metropolitan Railroad*, 137 Mass. 210, it was contended, that the attempt of the plaintiff to get upon the front platform of a horse car, while it was in motion, should be held to be "conclusive that he was not in the exercise of due care," but the Supreme Court of Massachusetts say in that case: "There is no rule of law that riding or stepping upon the front platform of a horse car when in motion is negligence.   (*Meesel* v. *L. & B. R. R.* 8 Allen, 234, and other cases.)   Whether any particular act of that kind is negligent, must depend upon the circumstances attending and characterizing it, and must ordinarily be determined by the judgment of a jury."   In the later case of *Briggs* v. *Union Street Ry. Co.* 148 Mass. 72, the same Court said: "Whether a person riding upon the front or rear platform of

a horse car, or getting on or off at either platform while the
car is in motion is in the exercise of due care, has repeatedly
been decided to be a question of fact for a jury." The same
doctrine has been held in New York. In *Eppendorff* v. *Brook-
lyn City & N. R. R. Co.* 69 N. Y. 195, it is said: "It cannot
be said, as matter of law, that it is always negligent for a per-
son to get upon a street car while in motion." (*Morrison* v.
*The Broadway and Seventh Ave. R. R. Co.* 22 Legal News, 219.)

We are referred to the case of *C. & N. W. Ry. Co.* v. *Scates,*
90 Ill. 586, as holding a contrary doctrine. There, however,
the party, who was injured by being brought in contact with
a post upon the railroad platform, attempted to get upon one
of the cars of a steam railway train after the train had started
from the depot or station. A stricter rule than that which is
applicable to horse cars must be held to apply to steam cars,
whose movements are more rapid, and whose propelling power
is more dangerous. As was said by the Supreme Court of
Pennsylvania in *Germantown Pass. Ry. Co.* v. *Walling,* 97
Penn. St. 55: "An act which would strike all minds as gross
carelessness in a passenger on a train drawn by steam power,
might be prudent if done on a horse car." In the later case
of *Chicago City Ry. Co.* v. *Mumford,* 97 Ill. 560, the plaintiff
was injured while alighting from a horse car which was in
motion, and it was held, that it was properly left to the jury
to decide whether the injury was due to the negligence of the
plaintiff, or of the driver of the car.

In the case at bar, while the proof shows that the car was
in motion, it does not show that its motion was otherwise
than very slow. Both Lloyd, the policeman, and the plaintiff,
swear, that they "stepped" upon the car. The act of "step-
ping" involves the idea of slow movement, and these parties
could not have stepped upon the car if it had been going
rapidly. There is nothing in the evidence, so far as we can
discover, to justify the assumption, contained in defendant's
refused instruction No. 9, that the plaintiff "jumped" upon

the car.   As the car was passing a point where three streets
intersected each other, and where the street, on which the car
was moving, was in a dangerous condition by reason of the
excavations for the cable, and by reason of the piles of dirt
and debris caused by such excavations, the motion of the car
must necessarily have been slow.

It is also assigned as error, that the court refused to instruct
the jury that the defendant was not guilty of any negligence.
Where a railroad company places its track so near an obstruc-
tion, which it is necessary for its cars to pass, that its pas-
sengers, in getting on and off the cars and while upon them,
are in danger of being injured by contact with such obstruc-
tion, it is a fair question for the jury whether the company is,
or is not guilty of negligence.

In *Ill. Cen. R. R. Co.* v. *Welch*, 52 Ill. 183, a brakeman, while
in discharge of his duties upon a slowly moving train, was
knocked off the car by an awning projecting from a station
house of the company on the line of the road; the company
was held to have been guilty of negligence, the dangerous prox-
imity of the awning having been known to its division super-
intendent and other officers.   There was the same holding in
*C. B. and Q. R. R. Co.* v. *Gregory*, 58 Ill. 272, where the com-
pany's fireman while in the discharge of his duty was injured
by a "mail-catcher," which had been placed by the company
near its tracks.   Again, in *C. & I. R. R. Co.* v. *Russell, Admr.*
91 Ill. 298, a brakeman engaged in his duties, while descend-
ing from the top of a freight car in motion, and coming in
collision with a telegraph pole so near the side track that
freight cars passed within eighteen inches of it, was thrown
from the car and killed; the company was held liable, although
it did not place the pole where it was; it was there said, that
the company should not have suffered the obstruction to be
in such dangerous proximity to the track, and that they were
affected with knowledge of its position, because it had been
there a sufficient length of time to give rise to a presumption

of notice. (*Dickinson* v. *Port Huron & N. W. Ry. Co.* 53 Mich. 43; *C. & A. R. R. Co.* v. *Pondrom,* 51 Ill. 333.)

It may be true, as claimed by counsel, that the appellant was obliged to move its track to the east in order to make the contemplated improvement; but it was a question for the jury to determine, whether too much space was left in the middle of the street for those putting in the cable, and too little space for the passage of the cars on which the public travelled; or whether the contrary was the fact.

It is also assigned as error, that the Court refused to give the eleventh and twelfth instructions asked by the defendant. These told the jury that, if when the plaintiff stepped upon the car, he knew the location of the track and its distance from the telegraph post, he assumed the risk of any injury he might receive, and could not recover. There was proof tending to show, that the track had only been moved to its temporary position about a week before the accident, and there was also proof tending to show that plaintiff was in the habit of travelling upon appellant's cars and of passing up and down Lincoln Avenue, though mostly on the opposite side of the street from that on which the obstruction was located. It was for the jury to say, whether he had the knowledge in question, or ought to have had it under all the circumstances. But all that was material in the refused instructions was expressed in the instructions given for the plaintiff, which told the jury, that, if the plaintiff knew the location of the track and its distance from the post, he was required to use more than ordinary care to avoid accident, and if he failed to do so, and thereby contributed to the injury, he could not recover; and that, if he knew of the condition of things at the point in question, and, by the exercise of ordinary care, could have foreseen and provided against the accident, their verdict should be for the defendant. These instructions, whether in all respects accurate or not, were certainly favorable to the defendant; and, therefore, there was no error in refusing instructions Nos. 11 and 12.

Complaint is also made that the court refused the following instruction: "The jury are instructed, as a matter of law, applicable to this case, that, under the ordinance of the city * * * the * * * company has no right to stop its cars except on the further crossing of street intersections." We cannot see how the defendant could have been injured by ·the refusal of this instruction, as it was immaterial whether the defendant had a right to stop its cars at the further crossing or not. It was admitted that the car was in motion, and no claim was made that the driver or conductor refused to stop the car at the place where plaintiff boarded it. It cannot be assumed, that danger of collision with the post could be always avoided because the company would stop at the further crossing when requested. The proximity of the track to the post may have been a menace of danger to persons on the car, or to persons forced by the crowded condition of the seats, or otherwise, to stand upon the platform. It has been held that it is inexcusable in a railroad company to permit an obstruction to stand so near its track as to render the use of the step or running board dangerous to life or limb, inasmuch as exceptional cases may arise when it is lawful and proper for even a passenger to use such stepping board. (*Dickinson* v. *Pt. Huron & N. W. Ry. Co. supra.*)

It is claimed that the court erred in refusing to give the following instruction: "The jury are instructed, as a matter of law, that, if you believe from all the evidence in this case, the plaintiff had no right to be where he was at the time of the accident, then the defendant was not answerable for the injury unless it was done wilfully."

This instruction is somewhat obscure and was calculated to confuse the jury. It might have been understood by them as referring to the particular part of the car where the plaintiff was when he met with the accident. If he was merely using the step for the purpose of ascending into the car, he ·was where he had a right to be. If he stood upon the step too

long, it cannot be said that he was thereby such a trespasser, as to relieve the company of any other liability than that of wilful injury.    The mere fact of riding on a platform of a street car is not conclusive proof of negligence.    (*City Railway Co.* v. *Lee,* 50 N. J. L. Rep. 435, and cases cited; *Topeka City Ry. Co.* v. *Higgs,* 38 Kans. 375; *Huelsenkamp* v. *Citizens'. Railway Co.* 37 Mo. 537; *Messel* v. *Lynn & Boston R. Co.* 8 Allen, 234; *Maguire* v. *Middlesex R. Co.* 115 Mass. 239; *Passenger Railway Co.* v. *Bondron,* 92 Penn. St. 475; *Germantown Passenger Ry. Co.* v. *Walling,* 97 id. 55; *Spooner* v. *Brooklyn City R. Co.* 54 N. Y. 230; *Butler* v. *Glen Falls S. H. & F. E. S. R. R. Co.* 121 id. 112.)    Hence there was no error in refusing the instruction, if it was designed to call attention to the position of the plaintiff on the step or platform along the side of the car.

But, in their argument, counsel for appellant seem to construe the instruction as referring to the right of the plaintiff to be on the car at all.    Even in this view it should not be left to the jury to determine what a man's right is, in a given case, without stating to them that such right would arise out of, or be based upon, certain facts which they might find from the evidence to exist.    A right is, of itself, a mere abstract thing. The evidence of the defendant tended to show, that there was posted in the cars of the company the following notice or rule : "passengers will not be allowed to get on or off this car while in motion."    The plaintiff swore, that he never knew of any such rule, and that the only notice, which he ever saw posted in any of the cars, was one which forbade passengers to get on or off the front platform.    Appellant claims, however, that appellee must be presumed to have known of the rule because he was in the habit of travelling upon the cars, and that, inasmuch as he violated the rule in getting upon the car at the time of his injury, he was a mere trespasser and not a passenger, and, therefore, not entitled to claim, at the hands of

the company, that degree of care and skill which a carrier owes to its passengers.

The rule has reference to the mode of getting upon the car, and not to the relation between the company and a person already on the car. The rule by its phraseology recognizes even those, who get on the cars while they are in motion, as passengers. The caution or warning is, not to "persons" or "parties" getting on or off, but to "passengers" getting on or off. The rule contemplates future action by the company in stating, that passengers "*will not be allowed*" to get on or off, etc., and, therefore, the enforcement of the rule may be waived. Whether such a rule has been waived or not will depend upon the circumstances of each case. Here, the proof of the defendant shows, that the conductor was standing on the back platform leaning against the dash-board, and saw plaintiff and the policeman before they stepped upon the car, and was looking at the plaintiff as he boarded the car at the second seat from the rear platform, and continued to look at him until he was knocked off by the telegraph pole, and shouted to him to "look out" just before he was struck by the pole. He did not warn plaintiff not to get upon the car while it was in motion, but suffered him to step upon the platform without objection. It was a fair question for the jury whether, under all the circumstances, the plaintiff was not invited to get on the car. If he was so invited, he was a passenger. In *Huelsenkamp* v. *Citizens' Ry. Co. supra*, it was said: "Though a passenger may have been upon the cars in violation of the rules of the railroad company, yet if it appears to the jury that these rules have been waived or revoked in his favor, he will nevertheless be entitled to his action for his injuries suffered from any want of care on the part of the company."

But we are not prepared to hold that a party is a trespasser after he gets on a horse car, even though no fare has been collected of him before he meets with an injury, simply because he has violated a rule of the company as to the mode of his

getting on.    The case of *C., B. & Q. R. R. Co.* v. *Mehlsack,*
131 Ill. 61, has no application here, because in that case the
proof tended to show that the person receiving the injury was
trying to "steal" a ride upon a train of steam cars.

It is not necessary that there be an express contract, in
order to constitute the relation of carrier and passenger, nor
that there should be a consummated contract.    The contract
may be implied from slight circumstances, and it need not be
actually consummated by the payment of fare, or entry into
the car or boat of the carrier.    "The whole matter seems to
depend largely upon the intention of the person at the time
he enters the boat, or cars," etc.    (Thompson on Carriers,
pp. 42, 43.)    In *Butler* v. *Glen Falls & C. R. Co.* 121 N. Y.
112, *supra,* it was said:    "It does not seem reasonable to as-
sume, as a matter of law, that a person who, in an orderly
way, attempts to enter a street car as a passenger, is to be re-
garded as a trespasser until a special contract has been made
with the conductor based upon the payment of the required
fare."    We find no evidence in the case at bar to show, that
the plaintiff did not take the car "for the purpose of being
conveyed thereupon as a passenger for hire," according to the
allegation in his declaration; nor does the proof show any-
thing in the conduct of the conductor to indicate that he did
not regard the plaintiff as a passenger.    Hence, there was no
proof to base the refused instruction upon, if it be admitted
that it is capable of the interpretation sought to be given to it.

Appellant suffered no injury from the refusal to give an in-
struction which told the jury that the negligence of the defend-
ant was not of itself sufficient to justify a recovery, because
other instructions which were given required them to find not
only such negligence of the defendant, but also the exercise of
ordinary care by the plaintiff.    Nor was there any error in
refusing certain instructions as to comparative negligence.
The jury were required by the instructions given to find, that
the plaintiff was in the exercise of ordinary care, and that the

defendant was guilty of such negligence as caused the injury. This was sufficient without confusing their minds by distinctions between the different degrees of negligence. They were also instructed, that the burden of proof was on the plaintiff, and that, before he could recover, he must prove his case, as alleged in the declaration, by a preponderance of the evidence. The declaration alleged both that the defendant was negligent, and that the plaintiff was exercising due care; and, therefore, both these prerequisites were required to be proven under the instruction given.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*